**2013 UT App 72**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,

*Plaintiff and Appellee,*

*v.*

JERRY LEE GRAHAM,

*Defendant and Appellant.*

Opinion
No. 20100828-CA
Filed March 21, 2013

Second District, Ogden Department
The Honorable Scott M. Hadley
No. 081901564

Randall W. Richards, Attorney for Appellant
John E. Swallow and Brett J. DelPorto, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion,
in which JUDGES WILLIAM A. THORNE JR. and
MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1     Defendant Jerry Lee Graham appeals his conviction for escape, a third degree felony, *see* Utah Code Ann. § 76-8-309 (LexisNexis 2012),[1] claiming that his trial counsel provided

---

1. Because the provisions in effect at the relevant time do not differ materially from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

ineffective assistance and that the trial court committed plain error. We affirm.

BACKGROUND

¶2      From June to July 2008, Defendant served part of a 45-day jail sentence on a charge originating in the Ogden City Justice Court. During his incarceration, Defendant was granted work release privileges that allowed him to leave the jail during daytime hours to perform work so long as he returned to the jail by a specified time each night.

¶3      Despite having been sentenced to forty-five days in jail, Defendant became convinced that he was entitled to be released after serving less than thirty days. Through his own formulation of subtracting his "two-for-one good time" served from his original sentence and then proportionally reducing the remaining days to be served based on his partial payment of an outstanding fine, Defendant arrived at the conclusion that he was supposed to be released from custody on July 4, 2008. Defendant brought his personal calculations to the attention of jail personnel on July 3 and inquired about being released the following day. The jail did not have any records corroborating Defendant's claim, and Defendant was consequently informed that nothing could or would be done until a sufficient investigation into the matter could be undertaken after the Fourth of July holiday.[2]

¶4      The next day, July 4, 2008, Defendant was allowed to leave the jail for his scheduled work release under the usual condition

---

2. Defendant claims that a blonde woman at the jail with a "distinguished English/British accent" told him that his jail sentence was completed. The jury apparently did not credit this claim, or at least did not believe that this never-identified woman had the authority to commute Defendant's sentence.

that he return to the jail by 7:30 p.m. No jail personnel told Defendant that he was free to leave the facility and not return, nor did jail personnel so much as hint at this scenario. Nevertheless, Defendant did not return as required that evening and was not heard from again until he was arrested on September 4, 2008. He was subsequently charged with escape.

¶5     At trial, Defendant testified in his own defense. Before he took the stand, the State made a motion in limine to exclude any evidence regarding the reasons for or circumstances surrounding Defendant's incarceration at the time of his escape. The court granted the motion, stating that the underlying reasons for Defendant's incarceration were irrelevant to whether he escaped from custody.

¶6     During his testimony, Defendant referred to, but did not produce, a number of documents supposedly evidencing that he had paid a portion of his outstanding fines, which by his calculations entitled him to be released from jail on or before July 4. Trial counsel was aware of these alleged documents, but he did not offer them into evidence because, as he explained, "[A]s far as I can tell, they don't exist, other than the dockets at the Court and, unfortunately, the dockets at the Court contradict what Mr. Graham has told me and what's in the report."

¶7     On cross-examination, the State asked Defendant numerous questions about his prior criminal history. Some of these questions specifically related to two prior parole violations. The first incident occurred in 2002, when Defendant left the state in direct violation of his parole agreement. After being arrested for leaving the state and being returned to prison, Defendant was paroled again in 2004. He failed to appear for a scheduled court date, however, and was sent back to prison for absconding. While the State was questioning Defendant about these two parole violations, Defense counsel did not raise any objections.

¶8      After discussing Defendant's parole violations, the State transitioned from Defendant's prior criminal history to the sentence that Defendant was serving at the time of his escape. Mindful of the order in limine, the prosecutor did not ask Defendant about the particular charge or the underlying reasons for his incarceration but did ask for specifics about the length and terms of Defendant's sentence. Nonetheless, Defendant began to discuss those prohibited details on his own, stating, "I didn't agree to hide from the jury that I got a . . . sentence for a suspended license. Let's be real here. Let's keep it real. It ain't like I killed anyone, or I robbed anyone." The State objected to Defendant's statements, and the trial court instructed the jury to disregard anything Defendant said that related to why he was in jail.

¶9      During his cross-examination, Defendant also complained that the prosecutor was "more concerned about [his] job and [his] status as far as wins and los[ses] compared to what's right and what's justice[.]" During closing arguments, the prosecutor remarked:

> [Defendant] said that I'm worried about wins and losses. Members of the jury, I am a prosecutor, and we have special ethics, and it says that I am a minister of justice, and what that means is, I am concerned about truth and right. I'm not concerned about wins, losses.

Trial counsel did not object to those comments, and the court did not instruct the jury to disregard them or refrain from taking them into consideration during deliberations. Defendant was ultimately convicted, and this appeal followed.

ISSUES AND STANDARDS OF REVIEW

¶10      Defendant asks us to reverse his conviction because he claims that he received ineffective assistance of counsel at trial.

Specifically, Defendant argues that his trial counsel was ineffective because he (1) failed to discover and introduce potentially exculpatory documents, (2) failed to object when the State questioned Defendant about and introduced evidence of his prior criminal history, and (3) failed to object to the State's "prejudicial and misleading statements" during closing argument.

¶11 "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To establish ineffective assistance of counsel, a defendant must show (1) that "counsel's performance was deficient" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When considering whether counsel's performance was deficient, we take into account "'the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant.'" *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (alteration in original) (quoting *Strickland*, 466 U.S. at 689). Because of the numerous legitimate decisions and trial strategies that exist in each case, a defendant "must 'overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment.'" *Archuleta v. Galetka*, 2011 UT 73, ¶ 39, 267 P.3d 232 (quoting *State v. Bullock*, 791 P.2d 155, 159–60 (Utah 1989)). Given the strong presumption of competence, "an ineffective assistance claim succeeds only when no conceivable legitimate tactic or strategy can be surmised from counsel's actions." *State v. Tennyson*, 850 P.2d 461, 468 (Utah Ct. App. 1993).

¶12 In order to demonstrate that counsel's performance prejudiced his defense, a defendant must "present sufficient evidence to support 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Archuleta*, 2011 UT 73, ¶ 40 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶13     Defendant also claims that the trial court made two errors, namely (1) allowing the jury to consider evidence of Defendant's prior criminal history and (2) permitting the State's prosecutorial misconduct during closing argument and allowing the prosecutor's prejudicial statements to be considered by the jury. Because Defendant raises these claims for the first time on appeal, he relies on the doctrine of plain error. Thus, he must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

## I. Deficient Discovery

¶14     Defendant argues that trial counsel was ineffective in failing to properly investigate the case and discover court documents that allegedly prove Defendant did not escape from custody. In essence, Defendant argues that if trial counsel had correctly discovered and offered into evidence a justice court minute entry and a corresponding court docket, then his personal calculations about his proper release date would have been validated, thereby proving that he did not escape from custody. We disagree.

¶15     While counsel has a duty to adequately investigate the underlying facts of a case in order to formulate the basis for an acceptable trial strategy, *see State v. Lenkart*, 2011 UT 27, ¶ 27, 262 P.3d 1, counsel is not obligated to view or interpret those underlying facts exactly as his client does when devising a trial strategy, *see State v. Wood*, 648 P.2d 71, 91 (Utah 1982). Indeed, once an adequate inquiry into the underlying facts has been made, counsel's tactical decisions will not be considered deficient unless there is no reasonable basis for those decisions. *See, e.g., State v. Walker*, 2010 UT App 157, ¶ 14, 235 P.3d 766 (noting that the decision of whether to call an expert witness is a matter of trial strategy that will not be questioned unless there is no reasonable basis for it).

¶16    Defendant's trial counsel's tactical decision not to introduce the court docket and minute entry was not deficient and did not prejudice Defendant's case. Contrary to Defendant's assertions, trial counsel performed adequate discovery and was aware of the documents at issue. He even shared his opinion about the documents with the trial court, stating that he did not believe that the documents corroborated Defendant's story and that there were no documents in existence that did.

¶17    Given the information contained in the docket and minute entry, it is easy to surmise why trial counsel chose not to introduce them. The documents do not contain an order that directed jail personnel to release Defendant on July 4, 2008, nor do they establish that July 4 was his proper release date. Even if the documents somehow prove that Defendant's calculated combination of good-time deductions and payment prorations was accurate and that he was theoretically entitled to be released on July 4, they certainly did not authorize Defendant to unilaterally convert his temporary work release into a permanent furlough. And absent some proof that jail personnel actually discharged Defendant, information that purportedly establishes Defendant's proper release date has no bearing on whether he escaped from custody. In sum, these documents are irrelevant to Defendant's guilt or innocence, and their admission would have done nothing to help Defendant's case at trial. Consequently, trial counsel's sound decision not to present them at trial was neither deficient nor prejudicial to Defendant.

## II. Prior Criminal History

¶18    Defendant asserts that trial counsel was ineffective for failing to object when the State questioned Defendant about his prior criminal history and that the trial court committed plain error by admitting the prior bad act evidence. Defendant insists that the evidence of his prior misdeeds had no probative value and should have been considered highly prejudicial in light of the trial court's

exclusion of any evidence relating to the underlying charge or reasons why Defendant was incarcerated when he escaped.[3]

¶19   While evidence of prior criminal history is not admissible to prove that a criminal defendant acted in conformity with a particular character trait, the evidence is admissible if offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, *absence of mistake*, or lack of accident." *See* Utah R. Evid. 404(b)(2) (emphasis added). Evidence of prior crimes will be allowed for the above purposes "if it (1) 'is relevant to,' (2) 'a proper, non-character purpose,' and (3) does not pose a 'danger for unfair prejudice' that 'substantially outweighs its probative value.'" *State v. Killpack*, 2008 UT 49, ¶ 45, 191 P.3d 17 (quoting *State v. Widdison*, 2001 UT 60, ¶ 41, 28 P.3d 1278).

¶20   All of the prior criminal history evidence offered by the State was admissible under rule 404(b)(2). Defendant consistently claimed that he had no idea that there was additional time remaining on his sentence and that he mistakenly believed that he was free to release himself from jail. To refute that claim, the State offered evidence that Defendant had previously been on parole and had violated the terms of that parole by fleeing the state. The State made clear that its purpose in introducing this evidence was limited to demonstrating an absence of mistake because Defendant clearly understood and was familiar with incarceration, release procedures, parole, and the difficulties that can accompany a premature departure from custody. Moreover, the State did not attempt to use Defendant's prior criminal history to prove that he acted in conformity with a particular criminal characteristic. *See* Utah R. Evid. 404(b)(1). Rather, the State merely offered the

---

3. Although Defendant contends that the trial court excluded evidence relating to the reasons behind Defendant's incarceration because it was more prejudicial than probative, the court actually excluded the evidence because it was irrelevant to "whether he left with or without authority."

evidence to show that, given his history and knowledge, Defendant could not possibly have been under the mistaken impression that he was free to leave the jail and never return merely because he calculated that his time was up.[4]

¶21    Because the prior criminal history evidence offered by the State was admissible, trial counsel was not ineffective for failing to object to its admission. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel."). Similarly, the trial court did not commit plain error by allowing the admissible evidence to be considered by the jury.

## III. Prosecutorial Misconduct

¶22    Defendant claims that the State committed prosecutorial misconduct during closing argument by implying to the jury that the prosecutor was held to special ethical standards requiring him to be, first and foremost, a champion of justice. Defendant argues that trial counsel was ineffective for failing to object to the remarks in question and that the trial court erred by allowing the jury to consider them.

¶23    "We will reverse a jury verdict because of prosecutorial misconduct if we find the prosecutor's remarks were improper and harmful to defendant." *State v. Calliham*, 2002 UT 86, ¶ 61, 55 P.3d 573. Remarks are considered improper if they "called to the jurors' attention matters which they would not be justified in considering in reaching a verdict." *State v. Creviston*, 646 P.2d 750, 754 (Utah 1982). Improper remarks are harmful to the defendant if, "under the circumstances, the jurors were probably influenced by the

---

4. Defendant's claim that it was improper for the State to elicit information about the specifics of his underlying convictions is unavailing, given that Defendant opened that door when, contrary to the court's order in limine, Defendant brought up the nature of the charge on which he had most recently been incarcerated.

remarks." *Id.* Remarks concerning matters that are peripheral to a defendant's guilt and cannot possibly prejudice a defendant unfairly will not be considered improper or harmful. *See State v. Tillman*, 750 P.2d 546, 556 (Utah 1987).

¶24    Although the State briefly discussed the ethical standards associated with being a prosecutor, those remarks were not improper and did not prejudice Defendant. The State did not in any way imply that Defendant or trial counsel operated on a lower ethical plane. In fact, the State did not mention Defendant or his counsel at all during these remarks other than to point out that Defendant had accused the State of prioritizing wins and losses over truth and justice. By making such an accusation, Defendant opened the door to an appropriate response by the State. And, within the context of Defendant's accusation, the jury no doubt viewed the State's remarks as a defense of its own ethical standards rather than an attack on Defendant's or trial counsel's character or ethical standards. Under all the circumstances, the verdict was likely not influenced by the remarks, trial counsel was not ineffective for failing to object to them, and the trial court did not plainly err in allowing them.

CONCLUSION

¶25    Defendant has not demonstrated deficient performance and prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984), and we conclude that trial counsel was not ineffective. We similarly conclude that the trial court did not commit plain error by admitting evidence of Defendant's prior criminal history and allowing the State's remarks during closing argument. Accordingly, we affirm.

—————