2014 UT App 13

**STATE of Utah, Plaintiff and Appellee,**

v.

**Ronnie R. WELLS, Defendant and Appellant.**

No. 20120540–CA.

Court of Appeals of Utah.

Jan. 16, 2014.

Don M. Torgerson and Samuel P. Chiara, Price, for Appellant.

Sean D. Reyes and Brett J. DelPorto, Salt Lake City, for Appellee.

Senior JUDGE PAMELA T. GREENWOOD authored this Memorandum Decision, in which Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.[1]

## Memorandum Decision

GREENWOOD, Senior Judge:

¶ 1 Defendant Ronnie R. Wells was charged with eight counts of aggravated sexual abuse of a child and four counts of lewdness involving a child, all arising from alleged incidents that occurred during the summer of 2011. The eight-year-old victim (Child), her older brother, and their little sister stayed with Wells and his wife (Grandmother) for a month that summer.[2] During that stay, Child asked to talk with Grandmother in private. Child told Grandmother that she had been playing a game with Wells that involved him holding her upside down in the air and that while they were playing, she thought she saw Wells's penis and it made her uncomfortable. Both Grandmother and Child briefly spoke to Wells about the incident, and Wells apologized if anything had happened that had made Child uncomfortable.

¶ 2 Sometime later during her stay, Child again asked to speak with Grandmother. This time she reported that while she had been playing truth or dare with Wells, he tickled her belly and legs, and also tickled her between her legs. Grandmother talked to Wells about this incident and also contacted the police.

¶ 3 Child subsequently claimed other instances of Wells exposing himself and of inappropriate touching. She testified at trial that on several occasions Wells had rubbed her vagina while watching movies, sometimes under her underwear and sometimes over it. She also testified that Wells had had her rub his penis multiple times and that he touched her inside her vagina several times. Additionally, she alleged that when Wells was carrying her to her bed, after he would "go past the wall [where the bathroom is]," he would then start rubbing her vagina. Child further alleged that the instances where she saw Wells expose himself while she was hanging in the air happened fifteen to twenty times that summer.

¶ 4 The jury found Child's testimony convincing and ultimately convicted Wells on each of the twelve counts. After sentencing, Wells timely appealed.

 ¶ 5 Wells challenges the sufficiency of the evidence to support his convictions. "As a general rule, claims not raised before the trial court may not be raised on appeal. . . . [This] preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346 (specifically applying the preservation rule to a claim of insufficient evidence). When arguing either of these exceptions, appellants are required "to articulate the justification for review in the party's opening brief" or else their claims are procedurally barred. *State v. Weaver,* 2005 UT 49, ¶ 19, 122 P.3d 566. Wells did not raise a challenge to the sufficiency of the evidence before the trial court, nor did he argue any exception to the preservation rule until his reply brief on appeal. Thus, Wells's sufficiency claim is procedurally barred.

 ¶ 6 Wells also argues that his trial counsel was ineffective for failing to file a

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

2. Although referred to by the children as their grandparents, neither Wells nor Grandmother is a biological grandparent of Child.

motion to arrest judgment before sentencing.[3] "[A] defendant raising an ineffectiveness claim must show first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant." *State v. Kelley,* 2000 UT 41, ¶ 25, 1 P.3d 546 (citation and internal quotation marks omitted). "To establish prejudice, [a] defendant must show a reasonable probability ... that except for ineffective counsel, the result would have been different." *Id.* (omission in original) (citation and internal quotation marks omitted). Consequently, "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel." *Id.* ¶ 26.

¶ 7 To determine whether filing a motion to arrest judgment would have been futile, we evaluate whether the evidence presented at trial was so questionable that such a motion would have caused the trial court to reverse the jury verdict. "[T]he court may only reverse a jury verdict when 'the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted.'" *State v. Robbins,* 2009 UT 23, ¶ 14, 210 P.3d 288 (quoting *State v. Bluff,* 2002 UT 66, ¶ 63, 52 P.3d 1210). As we conduct our evaluation, we "'review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the jury verdict.'" *Id.* (quoting *State v. Colwell,* 2000 UT 8, ¶ 11, 994 P.2d 177).

¶ 8 Wells argues that due to Child's inherently improbable testimony there was insufficient evidence to support the verdict. "Though the court must ordinarily accept the jury's determination of witness credibility, when the witness's testimony is inherently improbable, the court may choose to disregard it." *Id.* ¶ 16. However, such circumstances are quite limited, in that the trial court may "reevaluate the jury's credibility determinations only in those instances where (1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt." *Id.* ¶ 19. We address each of these requirements.

¶ 9 First, it does not appear that there are *material* inconsistencies in Child's testimony. Wells argues that Child's trial testimony and her original reports to Grandmother were inconsistent. Although Child's trial testimony alleged additional instances of abuse as compared to her initial reports to Grandmother, it does not appear that the separate disclosures were actually inconsistent. The only specific inconsistency between them that Wells asserts is that Grandmother questioned Child as to whether Wells touched her under her clothing and she responded that he had not, yet at trial Child testified of instances of touching under her clothing. However, reading the statement in context, it is clear that Child's response to Grandmother was limited to the specific truth-or-dare incident and was not a broad assertion that Wells had never touched her under her clothing. And the simple fact that Child alleged additional abuse later does not make Child's testimony inherently improbable. Indeed, at Wells's sentencing hearing,

3. Counsel for Wells in this appeal also served as trial counsel. Some Utah cases have declared that trial counsel should not act as counsel on a direct appeal that asserts ineffective assistance of counsel. *See State v. Litherland,* 2000 UT 76, ¶ 9, 12 P.3d 92 (citing *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991)); *State v. Garrett,* 849 P.2d 578, 580 n. 3 (Utah Ct.App.1993) (citing *Jensen v. DeLand,* 795 P.2d 619, 621 (Utah 1989)). The rationale underlying these declarations appears to be that it is unreasonable to expect counsel to critique his or her own performance, *see Jensen,* 795 P.2d at 621, and that the record may be inadequate to permit meaningful review by an appellate court, *see Hum-* *phries,* 818 P.2d at 1029. In this case, the State has challenged neither Wells's trial counsel's continued representation on appeal nor this court's ability to address the merits of the case. Furthermore, we believe that the record is adequate to address the claim of ineffectiveness of trial counsel and that judicial economy will be advanced by addressing the issue at this point. *See id.* (determining that judicial economy would be served in addressing the merits of the case, as opposed to leaving the issue to postconviction proceedings, where the court was "not aware of any evidence or argument which might be made that is not now before [it]").

the trial court noted a possible reasoning behind the jury crediting the later testimony:

> The initial disclosure was basically what Mr. Wells acknowledged on the stand, and then [Child] made much larger disclosures when she was interviewed. That doesn't necessarily mean she wasn't telling the truth. It might have been she was floating the idea first to see whether she'd get some support, and once she did she decided she'd tell the whole story. [4]

Thus, notwithstanding the differences between the reports, Child's multiple disclosures were not inconsistent, but merely cumulative, and simply added more details in the later statements.

¶ 10 Wells also argues that there were inconsistencies within Child's trial testimony as to the number of times abuse occurred and that it was improbable that he could have abused Child so frequently without Grandmother witnessing it. Child was indeed sometimes inconsistent when identifying the exact number of times certain acts happened, describing fewer incidents when first examined and then describing slightly more incidents on cross-examination. However, "it is not unusual that a child's testimony be somewhat inconsistent, especially in sexual abuse cases." *State v. Virgin,* 2006 UT 29, ¶ 38, 137 P.3d 787. And this type of inconsistency alone does not necessarily make a child's testimony inherently improbable. *See Robbins,* 2009 UT 23, ¶ 22, 210 P.3d 288 ("[The victim's] denial of any abuse to two investigators, *her inconsistent accounts regarding the extent of the physical abuse she suffered,* her age when the abuse occurred, and what she was wearing at the time of abuse may alone be insufficient to invoke the inherent improbability exception." (emphasis added)).

¶ 11 Nor does the alleged frequency of abuse make Child's testimony inherently improbable. Wells argues that if we were to believe that all of the incidents alleged occurred and were not observed by others, that would mean "an incident of aggravated sexual assault ... occurred, on average, multiple times each day" over the one-month period. However, considering that the abuse was alleged to have lasted only a few minutes each time and that it usually occurred either under a blanket while others in the room were watching a movie or after passing "the wall" as Wells was putting Child to bed, this could adequately explain the fact that Grandmother never witnessed the abuse. Further, even if the jury was not confident of Child's ability to remember the exact number of times the abuse occurred, the jury could have reasonably determined from the remainder of the testimony—where specific instances were discussed, including supporting details [5]— that the abuse happened often enough to support the eight counts of aggravated sexual abuse and the four counts of lewdness.

¶ 12 Wells also argues that Child's testimony is inherently improbable because she "never demonstrated much emotion" and "fabricated a story about keeping track on a notebook" of the times the abuse happened. Wells makes his judgments regarding Child's lack of emotion from a few phrases in her testimony, such as her descriptions of being "kinda shocked" and feeling "kinda bad," "kind of uncomfortable," and "not too good." However, the trial judge remarked at sentencing that Child "sounded like she was talking about something that really happened," and the jury could have easily arrived at the same conclusion. Reading witnesses' demeanor is a task best left to those actually hearing the testimony, and we cannot reliably glean such information from a cold record. *See Henshaw v. Henshaw,* 2012

---

4. Wells argues that the trial court's statements at sentencing constituted "uncharacteristic[ ]" "reservations and concerns about the jury verdict." We do not agree with that description of the statements, especially given the excerpt of those remarks we have included.

5. Wells argues that it is improbable that Child did not remember the details of what she and Wells were wearing or what movie they were

watching when she was first touched under the blanket. However, Child remembered that she was wearing pajama pants and she remembered other details from the episode, such as where each person in the room was seated while watching the movie. Also, when discussing other episodes of abuse, Child remembered what Wells was wearing and some of the specific movies they were watching.

UT App 56, ¶ 12, 271 P.3d 837 ("[T]rial courts have the benefit of viewing the witnesses firsthand, to assess their demeanor and to consider their testimonies in the context of the proceedings as a whole, making them much better equipped to make credibility determinations based on conflicting oral evidence than an appellate court that has access only to the cold record." (citing *State v. Calliham*, 2002 UT 86, ¶ 23, 55 P.3d 573)). As to Child's assertion regarding the notebook, certainly "patently false statements" made to cover up testimony inconsistencies can sometimes be considered indicative of inherently improbable testimony. *State v. Robbins*, 2009 UT 23, ¶ ¶ 22–23, 210 P.3d 288 (considering that the victim tried to cover up inconsistencies by "ma[king] up a story about a hearing problem" and claiming that she had been worried about an eavesdropper in the closet, when the room she was in had no closet). However, Child's claim of keeping a journal in the purple dresser at Grandmother's house was not patently false, but simply unverified. At sentencing the State explained that it "ha[d] no idea" whether the notebook existed and that there was no journal in evidence because the first mention of it was in response to defense counsel's question at trial.

¶ 13 Second, there were multiple pieces of evidence in addition to Child's testimony that corroborated her allegations of abuse. Child's brother testified that when they were watching a movie and Wells and Child were under the blanket, he would see "a bump in the blanket" that he thought was Wells's hand moving toward Child. Child's brother also testified that Child had told him that Wells was touching her inappropriately. Also, Wells himself admitted to two of the incidents, although he claimed that they were accidental. Because there is other evidence beyond Child's testimony that supports Wells's guilt, the trial court would be precluded from providing relief under the inherently improbable testimony theory. *Id.* ¶ 19 ("The existence of any additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility.").

¶ 14 In sum, "the court may choose to exercise its discretion to disregard inconsistent witness testimony only when the court is convinced that the credibility of the witness is so weak that no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* ¶ 18. This standard has not been met here, and the trial court could not have disregarded Child's testimony even had trial counsel petitioned for such in a motion to arrest judgment. Therefore, the filing of such a motion would have been futile, and Wells's counsel was not ineffective in this regard. Consequently, we affirm.