2016 UT App 10

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF J.C.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.C.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20140449-CA
Filed January 22, 2016

Fourth District Juvenile Court, Provo Department
The Honorable Brent H. Bartholomew
No. 1048554

Margaret P. Lindsay and Douglas J. Thompson,
Attorneys for Appellant

Sean D. Reyes, Cherise M. Bacalski, and Ryan
Tenney, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which SENIOR
JUDGE RUSSELL W. BENCH concurred.[1] JUDGE J. FREDERIC VOROS JR.
concurred, with opinion.

ROTH, Judge:

¶1    J.C. was adjudicated delinquent in juvenile court for
possession of drug paraphernalia, a class B misdemeanor if
committed by an adult, *see* Utah Code Ann. § 58-37a-5
(LexisNexis 2012), and possession or use of marijuana, also a

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

class B misdemeanor if committed by an adult, *see id.* § 58-37-8(2)(a)(i), (d) (LexisNexis Supp. 2015).[2] On appeal, J.C. argues that the juvenile court committed plain error by accepting hearsay testimony, and he challenges the sufficiency of the evidence supporting the adjudication. We affirm.

BACKGROUND[3]

¶2 J.C., his brother, and three other students from their high school left the school's campus during a school-wide assembly. A school resource officer (the SRO) "had received information" that students might be leaving campus during an assembly to smoke marijuana "in a grove of trees" located near the school. The SRO drove to a place where he could observe the area from his vehicle through binoculars. From this location, he "observed five . . . students walking down the canal trail and enter[ing] the grove of trees." Upon seeing the students, he "was able to identify" each student by name, including J.C. Although the SRO radioed for an additional officer to respond to the location, he became concerned that because the students were smoking marijuana, any evidence "might be destroyed by the time [he] waited for [the additional officer to arrive]." The SRO exited his vehicle, approached the five students—who were now standing in a circle—and said "don't move." All the students ran. The SRO gave chase, stating, "I know your names," and yelling "stop, police" multiple times. At this point, an additional officer had arrived and also gave chase. Four of the five students were

---

2. Because the statutory provisions in effect at the relevant times do not differ materially from the statutory provisions now in effect, we cite the current version of the Utah Code Annotated for convenience.

3. On appeal from a delinquency adjudication, we recite the facts in the light most favorable to the juvenile court's decision. *See In re J.F.S.*, 803 P.2d 1254, 1254 (Utah Ct. App. 1990).

apprehended, with J.C. escaping. The four students were taken back to the high school where they were subsequently interviewed by the school principal.[4]

¶3    The State filed a delinquency petition against J.C. alleging failure to stop at the command of a law enforcement officer, possession of drug paraphernalia, and possession or use of a controlled substance. J.C. and his brother, L.C., were tried together on all three allegations.[5] Before testimony began, the juvenile court asked each party to "identify their witnesses." The State identified six witnesses in the order they would be called: the SRO, the other responding officer, the school principal, and the other three students who had been in the circle at the grove of trees—J.M., N.C., and J.R. The attorney for J.C. and his brother responded that his clients "would be testifying perhaps if they choose to" but he did not expect to call any other witnesses.

¶4    As anticipated, the State first called the SRO, then the other officer, followed by the school principal, and finally the three students. The SRO testified that he smelled "a strong odor of burnt marijuana" as he started running toward where the students had been standing in a circle; that he "found a small baggie of marijuana" just a few feet from where J.M. and L.C. were apprehended; and that he discovered "a fresh apple pipe" in the location where the students were standing that had "burnt marks around the top of the apple where it's consistent that people carved out the apple to smoke marijuana." The other officer testified that although he could "[not] recall smelling any marijuana[,] . . . [he] did see the apple."

¶5    The school principal then testified about his conversation with the four students the police had apprehended, describing

_____

4. The four students were J.R., J.M., L.C., and N.C.

5. J.C.'s brother has also filed a notice of appeal, case no. 20140466-CA.

what J.R., N.C., J.M., and L.C. had said to him at the school following the incident. His testimony regarding the statements of J.R. and N.C. included information from both that implicated J.C. The principal testified that J.R. "indicated that . . . all five [students] were there and present and that all . . . four[,] excluding him[,] [had] taken a hit [of marijuana]."[6] And the principal also recounted that N.C. "confirmed" J.R.'s statements and "indicated also that . . . five [students] were present" in the grove of trees. But none of the information the school principal recounted from J.M.'s or L.C.'s statements included any specific reference to J.C.

¶6 Following the principal's testimony, the State called the other three students to testify.[7] The testimony of each student about what had happened in the grove of trees diverged from the principal's description of his interviews with each of them after they were apprehended. In particular, all of them testified that J.C., though part of a group that left school for the grove of trees, had left before the circle formed and before the apple pipe was passed around.

¶7 J.M. testified that all five students had left the school's campus that day and upon arriving at the grove of trees, he left the group to use the bathroom. He recounted that when he returned, everyone was in a circle facing each other and the apple pipe "was all just set up." The apple pipe was passed to him and he "was going to take the hit" but did not because the SRO arrived. Finally, he testified that, contrary to what the

---

6. "'Hits' becomes something of a term of art under these circumstances, describing the distinctive method of smoking marijuana, characterized by deep inhalation followed by long retention in the lungs." *Provo City Corp. v. Spotts*, 861 P.2d 437, 440 (Utah Ct. App. 1993).

7. The three had already been adjudicated for their involvement in this incident.

principal reported he had said, J.C. was not present in the circle because "J.C. left . . . when [they] got there," "[j]ust before" J.M. went to use the bathroom.

¶8     N.C. also testified that all five students left the school's campus during an assembly and "went over to a grove of trees" where, as he had told the school principal, he had "taken a couple hits" of marijuana from the apple pipe. He stated, however, that J.C. "was with [him] at the beginning, but then he left to the bus stop before everything happened," again contrary to what the principal said N.C. had told him earlier.

¶9     J.R. testified that all five students left the school's campus during an assembly but they walked in two separate groups to the grove of trees. By the time the two groups reunited near the canal, J.C. "was gone." When asked about the group's activities in the grove of trees, J.R. denied standing in a circle, denied seeing an apple or an apple pipe, denied passing an apple pipe to another person, and denied smelling any marijuana. This testimony was contrary to the principal's testimony about what J.R. had told him in the earlier interview.

¶10     At the end of the State's case, J.C.'s attorney moved for a directed verdict, "specifically to J.C. because beyond being seen there by the officer and the parties," according to "the boys who were there . . . , he left before any of the alleged incidents occurred." The juvenile court dismissed the allegation of failure to stop at the command of a police officer but denied the motion as to the other two allegations. J.C.'s attorney called no witnesses, but he renewed his motion for a directed verdict during his closing argument. The juvenile court, however, found the evidence against J.C. to be sufficient to support a delinquency adjudication for possession of drug paraphernalia and possession or use of marijuana. In its ruling from the bench, the court indicated that it found the SRO, the other officer, and the school principal to be "credible witness[es]," but not "[t]he young men that . . . testified." Rather, the juvenile court "believe[d] that . . . they either had a lapse in memory or . . .

there was some loyalty to [J.C.]." The court stated that although "[t]hey may have had their . . . [own] charges taken care of after the fact," it "sense[d] that there was some fudging a little bit on what they were saying."

¶11   J.C. appeals the juvenile court's delinquency adjudication as to both allegations.

ISSUES AND STANDARDS OF REVIEW

¶12   J.C. argues that the juvenile court erred by relying on the principal's testimony because it was inadmissible hearsay. Because J.C. did not preserve this issue below, he seeks review under the plain error doctrine. "In general, to establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined. If any one of these requirements is not met, plain error is not established." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993) (citations omitted).

¶13   J.C. also argues that the juvenile court erred by concluding that there was sufficient evidence to find J.C. delinquent. When a challenge to the sufficiency of the evidence is raised, "[w]e review the juvenile court's factual findings based upon the clearly erroneous standard." *In re S.O.*, 2005 UT App 393, ¶ 12, 122 P.3d 686 (citation and internal quotation marks omitted). And under the clearly erroneous standard, we will set aside the juvenile court's decision only when that decision is "against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *In re S.L.*, 1999 UT App 390, ¶ 20, 995 P.2d 17 (citation and internal quotation marks omitted). "[W]e defer to the

juvenile court because of its advantaged position with respect to the parties and the witnesses in assessing credibility and personalities." *Id.* (citation and internal quotation marks omitted). And we afford "wide latitude" to the juvenile court "based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' special training, experience[,] and interest in this field and . . . devot[ed] . . . attention to such matters." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680 (second alteration and omissions in original) (citation and internal quotation marks omitted).

ANALYSIS

¶14    We conclude J.C. has not demonstrated plain error in the juvenile court's reliance on the school principal's testimony. "Plain-error review requires looking at a well-settled, three-part test" that includes error, obviousness, and harmfulness. *See State v. Gailey*, 2015 UT App 249, ¶ 8, 360 P.3d 805. For purposes of this appeal, we will assume that the juvenile court erred by admitting the school principal's testimony. But we also conclude that J.C. has failed to demonstrate that this error was obvious. Because J.C. has failed to demonstrate that the error was obvious, we need not consider the other requirements of plain error review. *See Dunn*, 850 P.2d at 1209. And because the juvenile court could properly consider the school principal's testimony, the evidence was sufficient to support the court's adjudications of delinquency.

I. The School Principal's Testimony Was Not Plainly Inadmissible.

¶15    J.C. argues that "[t]he juvenile court committed plain error by admitting and relying upon hearsay evidence." J.C. asserts that "the juvenile court's acceptance of inadmissible hearsay, in the form of testimony from [the school principal] about what the other boys said when he interviewed them, was an obvious error and that without that evidence there is a

substantial likelihood that the court would not have found J.C. guilty."

A.    Error

¶16    J.C. argues that the principal's testimony about what the students told him was hearsay and not covered by any exception. According to J.C., while rule 801 of the Utah Rules of Evidence provides that an out-of-court statement is not hearsay if it "is inconsistent with the declarant's testimony" and "[t]he declarant testifies and is subject to cross-examination about [the] prior statement," Utah R. Evid. 801(d)(1), when the principal testified at trial about what the other students said to him on the day of the incident, none of the students had yet testified and, therefore, the principal's "statement[s] [were] not the statement[s] of a declarant witness inconsistent with [their] testimony." Further, J.C. asserts that because the principal's testimony was extrinsic evidence of the students' prior statements ostensibly introduced as impeachment, rule 613(b) of the Utah Rules of Evidence applied, which provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." *Id.* R. 613(b). J.C. contends that "this [hearsay] problem [was] not solved by the fact that . . . the declarants were later called as witnesses[,] because when they were called [to testify,] the State did not question them about their prior statements or elicit inconsistent statements and then confront them with [the school principal's] testimony," as required by rule 613. In sum, J.C.'s reasoning is that the State called a non-declarant witness and introduced the hearsay evidence prior to the declarants' inconsistent testimony and that when later questioning the declarants, the State did not confront them with their prior inconsistent statements and then give them an opportunity to explain any inconsistency. J.C. contends that as a consequence, the State failed to establish the required foundation for admissibility of the principal's testimony under rules 801(d)(1) and 613(b) and that the prior

statements of the three students should not have been admitted or considered.

¶17   Under the Utah Rules of Evidence, hearsay is not admissible unless the evidence meets one of several specific exceptions. *See id.* R. 802. Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." *Id.* R. 801(c). An "oral assertion" qualifies as a "statement," *id.* R. 801(a), and the role of "declarant" is limited to "the person who made the statement," *id.* R. 801(b). However, a "declarant-witness's prior statement" that "is inconsistent with the declarant's testimony" is not considered hearsay and may be admitted with proper foundation. *Id.* R. 801(d)(1)(A).

¶18   "To qualify for nonhearsay treatment under [the] rule[s], the out-of-court statement must be (1) Inconsistent with the witness's in-court testimony; or (2) The witness denies previously making the statement; or (3) The witness acknowledges that he or she has forgotten making the statement." R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 711 (2014); *see also* Utah R. Evid. 801(d)(1). In addition, where proof of the content of an inconsistent prior statement is offered through extrinsic evidence, rule 613 applies: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it . . . ." Utah R. Evid. 613(b).

¶19   Here, when the principal testified at trial about what the other three students said to him, none of those students had yet testified, and therefore, as J.C. contends, at that point the principal's "statement[s] w[ere] not the statement[s] of a declarant witness inconsistent with [their] testimony." In addition, when the other student-witnesses were examined at the end of the State's case, they were not questioned about their

prior statements to the principal at all, ostensibly in violation of rule 613's requirement that the student witnesses be afforded "an opportunity to explain or deny the [prior inconsistent] statement." *See id. But see* Edward Kimball & Ronald Boyce, *Utah Evidence Law* 8-287 (2d ed. 2004) ("Therefore, in Utah, any prior witness statement that is inconsistent with the witness's testimony . . . is admissible as nonhearsay evidence if the witness testifies at trial and the evidence is offered while the witness is still available to explain the inconsistency."). On the face of the record, therefore, there is a plausible argument that the State failed to lay a proper foundation for the principal's testimony about the three students' prior statements; and for purposes of this appeal, we assume that it was error for the juvenile court to admit and consider that testimony.[8] But as we explain below,

---

8. In support of its argument that J.C. cannot demonstrate any error by the juvenile court, the State focuses on rule 801's requirement to afford an "opportunity to test the declarant" through cross-examination, arguing that it is this "opportunity" that is "at the heart" of rule 801. And when this rule is coupled with rule 613, the State reasons, "It is thus the opportunity to explain and examine—and *not* an actual explanation and examination—that the rule requires." (Emphasis added.) Further, the State stresses that rule 801 "does not mandate any particular order for eliciting the prior inconsistent statement" "nor does it mandate . . . that the party eliciting the statement subject[] the witness to cross-examination about [the] prior statement." (Alterations in original.) The State maintains that "on its face" rule 801 "requires only that (1) the declarant testify and be 'subject to cross-examination about [the] prior statement,' and (2) the prior statement be 'inconsistent with the declarant's testimony.'" (Quoting Utah R. Evid. 801.) (Alteration in original.) The State asserts that it "met all the requirements" of rule 801— the students testified, they were subject to cross-examination, and their prior statements were inconsistent with their testimony—and shifts the responsibility to J.C. for any failure to afford them an opportunity to explain their prior statements,

(continued…)

any error would not have been obvious to the trial court under the circumstances.

B.     Obviousness

¶20    To warrant relief for plain error J.C. must establish not only that there was an error, but that "the error should have been obvious to the trial court." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993); *see also State v. Parker*, 2000 UT 51, ¶ 7, 4 P.3d 778. An error is obvious when "the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276; *see also State v. Alzaga*, 2015 UT App 133, ¶ 23, 352 P.3d 107. J.C. argues that the error should have been obvious to the juvenile court because "the plain language of the rules of evidence show that [the school principal's] testimony was filled with statements not made by the declarant while testifying at trial [and were] offered for their truth and not admitted as inconsistent statements subject to cross-examination." But even if the State failed to properly lay foundation to admit the school principal's hearsay testimony about the three students' statements, it does not automatically follow that the error should have been obvious to the juvenile court. This is because "on a pragmatic level, . . . courts are not required to constantly survey or second-guess the nonobjecting party's best interests or trial strategy[,]" but are only required to act "where errors are particularly obvious or egregious and would serve no conceivable strategic purpose." *State v. Labrum*, 925 P.2d 937, 939 (Utah 1996). Therefore, "[p]lain error does not exist when 'a conceivable strategic purpose' exists to support the use of the evidence." *State v. Bedell*, 2014 UT 1, ¶ 26, 322 P.3d 697 (quoting *State v. Hall*, 946 P.2d 712, 716 (Utah Ct. App. 1997)); *Fernandez v. Cook*, 870 P.2d 870, 876 (Utah 1993) ("It is well

_____

(…continued)
contending that it was "J.C. [who] chose not to cross-examine the boys about their prior statements, [although] he was given a full opportunity to do so." We do not resolve the issue here.

established that trial tactics and strategies are within counsel's prerogative and are generally left to counsel's professional judgment."); *see also State v. Larrabee*, 2013 UT 70, ¶ 78 n.14, 321 P.3d 1136 (Lee, J., dissenting) (noting that "sua sponte intervention can interfere with the trial strategy of the parties").

¶21 We conclude that any error in laying appropriate foundation for the school principal's hearsay testimony would not have met the standard for obviousness under the circumstances of this case. *See State v. Gutierrez*, 2015 UT App 25, ¶ 12, 344 P.3d 163 ("Because the error . . . was not obvious, the [juvenile] court did not plainly err . . . ."). In particular, a claimed error will not be considered obvious to the juvenile court if the court could reasonably have determined that trial counsel's actions were "the result of a consciously chosen strategy." *See State v. Bullock*, 791 P.2d 155, 158–59 (Utah 1989); *see also State v. Beck*, 2007 UT 60, ¶¶ 16, 18, 165 P.3d 1225 (explaining that the trial court's role is "to protect the accused's right to a fair trial," not to "usurp the function of counsel"). Evaluating the conduct from the perspective of J.C.'s counsel, the juvenile court could reasonably have determined that a decision not to object to the school principal's hearsay testimony was plausibly the result of a sound trial strategy. *See State v. Crosby*, 927 P.2d 638, 644 (Utah 1996) ("[W]e give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them."); *see also State v. Liti*, 2015 UT App 186, ¶ 18, 355 P.3d 1078 (citing *Crosby*, 927 P.2d at 644, with approval).

¶22 In particular, counsel could have decided that the State was in a position to cure a hearsay objection to the school principal's testimony if that objection were based on an argument that there was no prior inconsistent statement on the record because the students had not yet testified. *See* Utah R. Evid. 801(d)(1)(A); *see also State v. Wood*, 648 P.2d 71, 91 (Utah 1982) ("Decisions as to . . . what objections to make . . . are generally left to the professional judgment of counsel."). Here, J.C.'s counsel knew the order of the State's witnesses and could

have reasoned that the State would have responded to an objection by changing the witness order to call the students before the school principal. Because it would have encouraged the State to cure any deficiency, counsel could have decided that the objection would likely be pointless, and "[t]he failure to raise [a] futile objection[] does not constitute" an unsound trial strategy. *See State v. Christensen*, 2014 UT App 166, ¶ 10, 331 P.3d 1128 (citation and internal quotation marks omitted). In this regard, the juvenile court could have presumed that J.C.'s counsel had already spoken with the other student witnesses and knew that their testimonies would be inconsistent with the principal's account of their prior statements. *See id.* ¶ 17 (noting that appellate courts presume "that trial counsel 'observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge'" (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011))).

¶23    And J.C.'s trial counsel may also have decided that providing the other students an opportunity to explain their prior statements might emphasize the inconsistency in a way that further undermined the credibility of their trial testimony. *Cf. West Valley City v. Rislow*, 736 P.2d 637, 638 (Utah Ct. App. 1987) ("Defense counsel may have believed that any objection at this point in the proceedings would only have emphasized the negative aspects of the case to the jury. This could have been a legitimate exercise of judgment."). And counsel could have believed that in the process of curing such an objection, the principal's own testimony might be reinforced and emphasized to his client's disadvantage.

¶24    Further, J.C.'s trial counsel's silence may have been informed by concerns akin to the theories of recency and primacy, and in order to deemphasize the principal's testimony, he may have thought it best that it remain in the middle of the State's case rather than at the end where it may have been better remembered and had more impact. *See, e.g.*, Stewart I. Edelstein, *14 Tips for a Vigorous Defense of a Commercial Case*, 6 Prac. Litigator 7, 14 (2008) ("Under the theory of recency, what is

heard last has more persuasive staying power than something in the middle of a trial."); John R. Overchuck & Laura Patrice Denault, *in* Products Liability in Florida § 8.10 (Fla. Bar, 3d ed. 1995) ("The principles of 'primacy' and 'recency' have long been established and accepted as being critically important in the decision-making process. The theory of primacy (what we first learn about any subject we tend to believe most deeply) is tempered by the theory of recency (we remember best what we last learned).").

¶25   In sum, there were legitimate strategic reasons why an attorney in the position of J.C.'s counsel would decline to object under the circumstances. Although a trial court "may not simply turn a blind eye" where the errors are "particularly obvious or egregious and would serve no conceivable strategic purpose," a court is not "required to constantly survey or second-guess the nonobjecting party's best interests or trial strategy." *State v. Labrum*, 925 P.2d 937, 939 (Utah 1996). Thus, because there were conceivable strategic purposes for not objecting to the school principal's testimony, any error would not have been obvious to the juvenile court. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Therefore J.C. has failed to establish the second requirement of our plain error standard. *See State v. Bullock,* 791 P.2d 155, 158 (Utah 1989) ("[I]f a party through counsel has made a conscious decision to refrain from objecting . . ., we will then decline to save that party from the error.").

C.   Harmfulness

¶26   The final requirement an appellant must demonstrate to establish plain error is that the error was harmful. *See Dunn*, 850 P.2d at 1208. An error is harmful if "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Id.* at 1208–09. Because J.C. has failed to demonstrate the second requirement—that the error should have been obvious to the juvenile court—we do not need to address

this third requirement. *Id.* at 1209 ("If any one of [the plain error] requirements is not met, plain error is not established.").

¶27    Accordingly, we conclude that even if the State failed to lay a proper foundation for admission of the principal's impeachment testimony regarding the statements made to him by the other students, any error would not have been obvious to the juvenile court because there were conceivable strategic purposes for J.C.'s counsel to have refrained from objecting. Because J.C. has failed to demonstrate that any error was obvious, his plain error argument fails.

## II. The Evidence was Sufficient.

¶28    J.C. contends that the evidence presented was insufficient to sustain the juvenile court's decision adjudicating him delinquent of possession of drug paraphernalia and possession or use of marijuana. We are not convinced, however, that the decision was "against the clear weight of the evidence" or "that a mistake has been made." *In re S.L.*, 1999 UT App 390, ¶ 20, 995 P.2d 17 (citation and internal quotation marks omitted). In this case, the juvenile court used its "advantaged position" to assess the witnesses' "credibility and personalities." *Id.* (citation and internal quotation marks omitted). The court heard testimony from the SRO, the other responding officer, the school principal, and the three other students. The court found the SRO, the other responding officer, and the school principal to be "credible" witnesses. And the principal's testimony about the statements of the interviewed students, which the juvenile court could consider for their truth under Utah law,[9] placed J.C. in the circle

---

9. The advisory committee notes to rule 801(d)(1) explain that the Utah rule "deviates from the federal rule in that it allows use of prior statements as substantive evidence" as well as for impeachment. Utah R. Evid. 801(d)(1). *Compare* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 752 (2014) ("An out-of-court statement inconsistent with the in-

(continued…)

and taking a "hit" from the apple pipe. The court clearly found the exculpatory testimony of the three students to lack probative weight, noting that their testimony involved what the court seemed to consider questionable "lapse[s] in memory" or was motivated by some form of "loyalty" to J.C., leading the court to a "sense that there was some fudging . . . on what [the students] were saying."[10]

¶29   Therefore, having concluded that the juvenile court looked at "the totality of the circumstances," "weigh[ed] the evidence," and made "decisions on [the] credibility of the witnesses," we are not persuaded that its decision was "against

---

(…continued)

court testimony of the same witness is both conceptually nonhearsay if offered only for impeachment purposes and admissible as substantive evidence under Utah Rule 801(d)(1)(A)."), *and* Edward Kimball & Ronald Boyce, *Utah Evidence Law* 8-285 to -286 (2d ed. 2004) ("The 1971 Utah Rules of Evidence made a witness's prior inconsistent statements admissible both for impeachment and as substantive evidence."), *with* Kenneth S. Broun et al., *McCormick on Evidence*, § 34, at 207 (7th ed. 2013) ("Even though the statements are inadmissible hearsay as evidence of the facts asserted, they are admissible for the limited purpose of impeaching the witness."), *and* David P. Leonard, *The New Wigmore: A Treatise on Evidence*, § 3.8.2, at 411 (2002) ("When the evidence is offered to prove the truth of the prior statement, it will be excluded by the hearsay rule unless the statement is a party admission or otherwise satisfies an exception to the rule.").

10. It was apparently considerations such as these that led appellate counsel for J.C. to concede at oral argument that if the school principal's testimony was admissible, then the evidence was sufficient to support J.C.'s adjudication.

the clear weight of the evidence" or "that a mistake has been made." *See id.* (citation and internal quotation marks omitted).

CONCLUSION

¶30   We conclude that the juvenile court did not plainly err in admitting the school principal's testimony. Consequently, the evidence presented was sufficient to support J.C.'s adjudication for delinquency. We therefore reject both of J.C.'s claims.

¶31   Accordingly, we affirm.

————————

VOROS, Judge (concurring):

¶32   I concur in the majority opinion. However, I think it worth mentioning that any error, in addition to not being obvious, was also not harmful. An error is harmful if, "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). J.C. has not shown a reasonable likelihood of a more favorable outcome—nor can I imagine one—if the witnesses had testified in proper sequence and the other boys had been asked whether their statements to the principal accorded with his trial testimony or their own.

————————